UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>JOSE RODRIGUEZ-FLORES,<br>    Defendant. | CRIMINAL ACTION NO. 5:13-97-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

On February 25, 2013, Lexington police officers responded to a 911 call reporting that a woman was lying unresponsive in her bed. When officers arrived and found that the woman was dead, they remained to secure the scene until the coroner arrived to conduct a cause-of-death investigation. While securing the scene, the officers observed items that were—in their experience—consistent with drug trafficking. Later, they obtained a search warrant. The defendant asserts that before the coroner arrived, the officers performed an illegal warrantless search of the residence and then used the illegally obtained evidence in support of the search warrant. Accordingly, the defendant seeks to suppress all evidence obtained from the search. The United States maintains that the officers' initial search of the residence was necessary to secure the scene and to preserve possible cause-of-death evidence. The United States also contends that the defendant has failed to prove that the officer's affidavit contained any material misrepresentation and that the evidence would have inevitably been discovered.

For reasons stated below, the Court will not suppress the contents of the search.

## I. PROCEDURAL BACKGROUND

The procedural posture leading to the instant motion is worthy of examination. On January 14, 2014, one week before trial was scheduled to begin and well past the court-imposed deadline for filing suppression motions, Defendant Rodriguez-Flores filed a motion to suppress. The defendant offered no explanation for his late filing. Three days later, the United States responded in opposition to the motion arguing, among other things, that the defendant lacked standing to assert the motion because the residence was owned by a third party. On the original January 22 trial date, the Court conducted a hearing at which it granted the defendant's motion for a continuance until June 9, 2014 so that defense counsel could fully brief the suppression motion and have adequate time to prepare for trial. Defense counsel represented that he would file a reply brief addressing the suppression motion no later than the following day. But defense counsel never filed a reply brief. *See United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001) (holding that a defendant has the burden of establishing his standing to assert a Fourth Amendment violation). After three months elapsed, the Court considered the merits of the motion and determined that Rodriguez-Flores lacked standing to contest the search. (DE 303). Because the Court determined that Rodriguez-Flores lacked standing, the Court did not evaluate any other claims.

Two days later, on April 24, 2014, the Court held a pretrial conference in anticipation of the looming June 9 trial date. Without any reference to the Court's ruling on the suppression motion, defense counsel made an oral motion to continue the trial. The Court denied the motion but informed defense counsel that it would reconsider the request upon articulation of specific reasons necessitating further delay. Defense counsel never provided

the Court with further reasons, but the trial was later continued until August 11, 2014 upon a codefendant's motion in which Rodriguez-Flores joined.

More than sixty days after the court denied the defendant's suppression motion, the defendant requested leave to file a motion to set aside the suppression order. (DE 413). In an affidavit, defense counsel stated that during "the months of January through May, [he] was dealing with a particularly difficult client in a CJA assigned case in the Western District of Kentucky," and preparing for a complicated jury trial scheduled to begin on May 6. (DE 413-1, ¶ 7). On April 28, however, the complicated jury trial was continued until August 5, 2014. (DE 413-1, ¶ 7). Counsel further explained that his heavy case load combined with complicated discovery caused his untimeliness, and he asked the Court not to punish the defendant because of counsel's missteps.

Rodriguez-Flores's motion to set aside the Court's order (DE 414) is simply a reply to the defendant's earlier suppression motion. Rodriguez-Flores asserts that he has standing to contest the search warrant and, as evidence, cites that investigators knew that the defendant lived in the house and repeatedly referred to the house as his residence. The defendant argues that this evidence conclusively establishes his standing because he had a legitimate expectation of privacy as either a resident or an overnight guest in the dwelling. The defendant further argues that a hearing would be required to resolve the issue. All of these arguments could have, and should have, been raised in the context of his original suppression motion. Nevertheless, to avoid any possible prejudice to the defendant, the Court conducted an evidentiary hearing on August 4 and 5, 2014. At the hearing, the Court determined that the defendant's motion to suppress fell—at least in part—within the scope of *Franks v. Delaware*, 438 U.S. 154 (1978), because the defendant appeared to challenge the veracity of the affidavit supporting the search warrant. The defendant informed the

Court that he was not prepared to bear the burden of proof as required by *Franks* because he thought his challenge was limited to the initial warrantless search. The defendant had not, however, subpoenaed a single witness, including those necessary to prove his standing to challenge the search warrant.

Although the Court was skeptical of the defendant's theory, it directed the United States to proceed as if the defendant had challenged a warrantless search. The United States obliged. The presentation of proof by the United States lasted until the end of the day on August 4, at which time the Court continued the hearing until the following day to allow the defendant to call witnesses to rebut the United States, prove his standing to challenge the search warrant, or satisfy his burden under *Franks*.

Accordingly, by the end of the day on August 5, both the United States and the defendant had called all relevant witnesses and presented any evidence concerning both the defendant's claim that the officers conducted a warrantless search *and* any possible challenge under *Franks*. The Court then took the defendant's motion under advisement.

## II. LEGAL STANDARD FOR MOTION TO SET ASIDE

The Court construes Rodriguez-Flores's motion to set aside as one for reconsideration. The Federal Rules of Criminal Procedure do not account for motions to reconsider, and lacking any procedural rule otherwise, "[c]ourts adjudicating motions to reconsider in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e)." *United States v. Titterington*, No. 2-20165, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003) (citing *United States v. Thompson*, 125 F. Supp. 2d 1297, 1300 (D. Kan. 2000)) (collecting cases). Accordingly, such a motion would need to "be filed no later than 28 days after the entry of

4

the" order, and comply with the standards under Rule 59(e). Fed. R. Civ. P. 59(e). As noted above, the instant motion was filed more than sixty days after the original order.

Crucially, a motion to reconsider under Rule 59(e) can be made for one of only four reasons: (1) to correct a clear error of law; (2) to account for newly discovered evidence; (3) to address an intervening change in controlling law; or (4) or to prevent manifest injustice. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). The defendant does not attempt to explain why any of these four circumstances apply. The defendant simply uses his motion as an opportunity to reply to the standing issue, but a motion to set aside "is not an opportunity to re-argue a case." *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Because a defendant's freedom is at stake and in an abundance of caution, however, the Court will consider the merits of the defendant's motion. Thus, the record will reflect that the defendant has been given every benefit from this process.

### III. UNDERLYING FACTS

On the morning of February 25, 2013, Lexington Police Officer Bryan Tolson was dispatched to 1404 Pleasant Ridge Drive to assist the fire department in responding to a 911 call regarding an unresponsive, twenty-five-year-old woman. He arrived at approximately 8:30 a.m. and found the fire department on the scene. Tolson entered the residence where he observed the victim, Lacee Heavener, lying on her bed. He also observed large amounts of currency spread throughout the bedroom, including a purse full of cash near her body.

Soon after Tolson's arrival, the fire department left to transport Heavener to the hospital. Tolson followed. He left the residence unsecured, and contacted his supervisor to inform him of the circumstances. Tolson testified at the hearing that he was not able to

secure each room of the house prior to leaving. Because the residence was left empty and the circumstances surrounding Heavener's death were unknown, Officer Jeff Blanton was dispatched to Pleasant Ridge Drive to secure the residence until the coroner could arrive.

Blanton arrived at approximately 9:15 a.m. Blanton immediately performed a protective sweep[1] because Officer Tolson had not secured each room and the residence had been unattended for at least twenty minutes before Blanton arrived. He had to verify that no one had entered who might pose a safety threat or disturb the scene. Once he finished sweeping the residence, Blanton positioned himself near the center of the house so that he could watch both the front and back entrances. He remained in this position until the coroner arrived.

While Blanton performed the protective sweep, he observed several items that, based upon his training and expertise, were suspicious. These items included a large amount of currency spread throughout the house; a wallet sitting on the kitchen counter stuffed with so much cash that it could not be closed; plastic wrappings in the kitchen trash can, on the kitchen counter, and on the living room floor; and what appeared to be a drug-related debt list in the kitchen trash can. Based upon these observations, Blanton suspected that some type of narcotics trafficking had occurred in the residence.

At approximately 11:00 a.m., Officer Blanton called Danny Page, a narcotics detective with the Lexington Police Department, to explain what he had observed in the residence. Both officers testified that Blanton also provided Page with a name listed on a business card lying atop the kitchen counter. Page testified that he believed the name was connected to an ongoing police investigation. He then left for the residence.

---

[1] A protective sweep involves an officer methodically inspecting each room of a building to ensure that nothing threatens the officer's safety.

When Detective Page arrived, Officer Blanton showed Page all of the items that he had observed. Page testified that he did not touch anything during the walkthrough. Drawing on his expertise and training as a narcotics detective, Page determined that the residence was likely the scene of drug-trafficking activities and a search warrant was necessary to proceed further.

The coroner arrived while Detective Page was conducting his walkthrough. Upon arrival, the coroner assumed control over the scene and began his statutorily authorized death investigation. *See* K.R.S. § 72.415 (authorizing the coroner to "[e]nter upon public or private premises for the purpose of making investigations" into cases statutorily defined as a "coroner's case" under K.R.S. §§ 72.025, 72.405). The defendant does not dispute the coroner's right to enter the premises and conduct a search for the purpose of fulfilling his duties, and Deputy Coroner Al Beatty testified that it is standard operating procedure for officers at the scene to assist the coroner in conducting his death investigation.

Once Detective Page determined that the residence was likely the scene of drug-trafficking activities, he approached Deputy Coroner Beatty and requested that the coroner release the scene to the police department's authority. Beatty agreed. Page then instructed all personnel to exit the residence, sealed the door, and applied for a search warrant.

Detective Page served as the sole affiant in his application for a warrant. In the affidavit, he stated the following:

> On the 25 day of Feb 2013 at approximately 11:08 a.m., affiant . . . received information from Officer Jeff Blanton in reference to a death investigation at 1404 Pleasant Ridge Drive Lexington, Kentucky. Officer Blanton informed the affiant that at approximately 8:20 a.m. he was dispatched to 1404 Pleasant Ridge Drive in reference assisting [sic] Lexington Fire Department personnel with a death investigation of a 25 year old female subject. Upon Officer Blanton's arrival he secured the residence and during this time he observed in plain view a

7

> large amount of US currency and while trying to locate a possible cause of death, located several items indicative of narcotics trafficking. Officer Blanton located what appeared to be a debt list in a black trash can located in the kitchen along with several zip lock baggies with residue, imprints of pills, and one had "1000" written on the baggy. At this point Officer Blanton contacted the affiant for assistance.

(Affidavit and Petition, DE 200-2, at 2). The next paragraph in the affidavit describes what Page personally observed when he arrived on the scene:

> [A]fter receiving the information the affiant went to 1404 Pleasant Ridge Drive. Upon arrival the affiant met with Officer Blanton, Officer B. Tolson, Deputy Coroner Al Beatty. During this time Officer Blanton showed the affiant the items he had located. Those items included two sheets of paper which appear to be narcotics debt list, three zip lock baggies with residue and what appeared to be imprints of pills, and one baggy had written on it "1000". Also observed in plainview [sic] was a large amount of US currency on the kitchen counter, US currency in plainview [sic] in the trash can in the master bedroom, plastic wrappings consistent with narcotics trafficking. The affiant after observing these items feels that these items are indeed indicative of narcotics trafficking.

(Affidavit and Petition, DE 200-2, at 2).

The warrant was granted and a search of the residence was conducted.

Rodriguez-Flores argues, first, that the facts as alleged in the affidavit constitute an illegal warrantless search; and second, that the evidence in the record is inconsistent with the facts alleged in the affidavit and such material misrepresentations are sufficient to justify the exclusionary rule under *Franks*. Both of these arguments are in error.

## IV. BURDENS OF PROOF

The United States contends that the defendant bears the burden of proof because his motion challenges the veracity of the affidavit used to support a duly-issued search warrant. Under *Franks*, a defendant making such a challenge must put forth "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be

8

accompanied by an offer of proof." 438 U.S. at 171. Thus, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*. According to the United States, Rodriguez-Flores has failed to meet this burden.

The defendant contends, however, that *Franks* is not the appropriate framework for the instant action. He argues that his motion to suppress is not intended to attack the veracity of Detective Page's affidavit, but to challenge the search conducted by Officer Blanton prior to obtaining the warrant. Without this warrantless search, he argues, the officers never would have obtained the evidence necessary to procure the warrant. Rodriguez-Flores does not rely on *Franks* and claims that the United States bears the burden of proof because of Blanton's warrantless search. *See, e.g.*, *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007) ("The government has the burden of proving the legality of a warrantless search."); *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002) (same).

The Court interprets the defendant as making two different arguments. First, Rodriguez-Flores contends that the evidence procured from the search warrant should be suppressed as fruits of Officer Blanton's warrantless entry into the residence prior to the coroner's arrival. For this argument, the burden is on the United States to prove why the evidence should not be suppressed. Second, and in the alternative, Rodriguez-Flores contends that the evidence should be suppressed under *Franks* due to the alleged misrepresentations in the affidavit and the officers' actions while they waited for the coroner. Here, the defendant bears the burden of satisfying the elements required to prevail under *Franks*. The Court will analyze each argument in turn.

9

# V. ANALYSIS

**A. Any Evidence Obtained from a Warrantless Search Would Have Been Inevitably Discovered.**

The defendant contends Officer Blanton only needed a few minutes to secure the residence and then he should have exited the house to wait outside (in mid-February) for the coroner. Instead, Blanton remained in the residence and observed additional suspicious items—such as the business card.

*1. The Items Observed Were in Plain View after a Lawful Entry.*

Warrantless searches are presumptively unreasonable, and the United States ordinarily must prove the officer's actions fell within one of the well-established exceptions to the Fourth Amendment's warrant requirement. *See United States v. Radka*, 904 F.2d 357, 360 (6th Cir. 1990). Under the exigent circumstances exception, officers responding to medical emergencies may secure a scene for both safety and evidentiary concerns. *See, e.g.*, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (collecting cases); *Stricker v. Township of Cambridge*, 710 F.3d 350, 361–62 (6th Cir. 2013) (upholding a protective sweep as "objectively reasonable" by officers responding to a 911 call when they "turned the house upside down" as they searched for clues as to what the victim might have ingested to cause his overdose).

Here, Rodriguez-Flores does not dispute that Officer Tolson had a right to secure the residence where a woman unexplainably died. But, the defendant argues, the *second* entry—Officer Blanton's protective sweep—was impermissible because Officer Tolson had secured the residence and the fire department had removed the victim's body.

Officer Tolson had not, however, secured the residence. Tolson testified that, upon arrival, he attended to the victim and the victim's immediate surroundings, but Tolson did not complete a protective sweep of the residence. Additionally, the residence was unsecured

for approximately twenty minutes before Officer Blanton arrived. Consequently, Blanton needed to conduct a protective sweep to secure the entire residence and protect against potential changes to the scene following Tolson's departure. The justification for Blanton's reentry mirrored Tolson's entry: secure the scene where a twenty-five-year-old woman died. Blanton's testimony indicates that he did that—and nothing more—prior to the coroner's arrival.

The defendant also contends that once the residence was secured, Officer Blanton did not need to maintain the integrity of the scene from inside the house and should have waited outside. Once an emergency is contained, an officer cannot then conduct an exhaustive search of the premises without first obtaining a search warrant. *See Flippo v. West Virginia*, 528 U.S. 11, 14 (1999) (holding that an exhaustive, sixteen-hour warrantless search of a residence where a homicide occurred violated the Fourth Amendment). But Blanton did not conduct a search. Blanton testified that waiting inside the residence enabled him to monitor both the front and back exits—an impossible task from outside the residence.

Officer Blanton was lawfully inside the residence when he observed all of the items in plain view. *See also United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (explaining that officers may even seize contraband when it is observable in plain view). The currency spread throughout the house, the wallet sitting on the kitchen counter, and the plastic wrappings in the kitchen and the living room were all observable whether Blanton was in the house for two minutes or two hours. The defendant has provided no evidence supporting the claim that these items were only discovered after an impermissible search.

### *2. The Evidence Would Have Been Inevitably Discovered.*

Crucially, it is *uncontested* that all of the evidence would have been inevitably discovered during coroner's lawful cause-of-death investigation. "[W]here 'tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.'" *United States v. Witherspoon*, 467 Fed. App'x 486, 490 (6th Cir. 2012) (quoting *Murray v. United States*, 487 U.S. 533, 539 (1988)). This rule applies "(1) when an 'independent, untainted investigation . . . inevitably would have uncovered the same evidence'; or (2) when there exist 'other compelling facts establishing that the disputed evidence inevitably would have been discovered.'" *Id.* (quoting *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995)). The testimony at the evidentiary hearing establishes that the coroner would have discovered *all* of the evidence supporting the warrant. Deputy Coroner Beatty testified that it is standard operating procedure to look through cabinets, trash cans, and other similar vessels while conducting a cause-of-death investigation.

Here, the coroner would have instructed the officers to make such a search. Either the coroner or the officers would have discovered all of the plastic wrappings and debt list, some of which were located in trash cans. Thus, even if Officer Blanton's conduct was unlawful while he waited inside of the residence, the coroner would have inevitably discovered this evidence. For this reason, the Court finds that the United States has met its burden to justify the warrantless search, and the defendant's motion must be denied.

**B. The Defendant Has Failed to Satisfy the Elements to Suppress under *Franks*.**

Alternatively, the defendant claims that the search warrant was illegally procured through the officers' intentional misrepresentations. Under the doctrine established by *Franks v. Delaware*, "[s]tatements in an affidavit that are intentionally false or made with

12

reckless disregard for the truth must be stricken." *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993) (citing *Franks*, 438 U.S. at 155–56). This doctrine applies to statements made by the affiant himself, or other governmental officers "who furnish erroneous information to the affiant." *United States v. Neal*, No. 3:11-69, 2012 WL 2154271, at *8 (E.D. Tenn. June 12, 2012) (citing *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992)); s*ee also United States v. Delgado*, 121 F. Supp. 2d 631, 640–41 (E.D. Mich. 2000) (holding the same). If such statements exist, the Court must set aside the misleading material and determine whether "the remaining content of the affidavit is insufficient to establish probable cause." *Ayen*, 997 F.2d at 1152. If it is, the fruits of the search must be suppressed. But the burden under *Franks* is on the defendant, and he must establish that "(1) the statements were made intentionally or with reckless disregard for the truth; (2) the deliberate falsity or reckless disregard is that of the affiant and not of the informant; and (3) negligence or innocent mistake does not account for the falsity." *Id.* Crucially, "the deliberate falsehood must be material." *Id.* (citing *United States v. Campbell*, 878 F.2d 170, 173 (6th Cir. 1989)).

The defendant maintains that Officer Blanton made a material misrepresentation when he stated that the evidence described to Detective Page and referred to in the affidavit was found in plain view. At the evidentiary hearing, however, the defendant only provided evidence contesting that the wallet and debt list were not in plain view. He offered no proof to rebut the officers' testimony regarding where the other items were found.

First, the defendant's sister testified that the wallet containing a large amount of cash was not on the kitchen counter when she arrived that morning. The Court finds this lacks credibility. The witness is the defendant's sister and therefore has an interest in providing favorable testimony. Further, she testified that she arrived at the residence to find Ms.

13

Heavener unconscious and then assisted the fire department. The Court finds it incredible that she noticed that someone else's wallet was *not* on the kitchen counter and could recall this convenient observation more than a year later. Moreover, the defendant provides no evidence that the wallet must have been moved. Overall, the defendant failed to provide sufficient proof that the statement concerning the wallet was plausibly false.

Second, the defendant provides unconvincing evidence that the debt list was not found in plain view. At the hearing, he noted that the debt list was creased, indicating it had been folded. But conjecture does not meet the burden of proving that the officers made an intentionally false statement. Once folded, paper remains creased even if it is later unfolded. The defendant's observation does not prove by a preponderance of the evidence that Officer Blanton intentionally misrepresented the fact that he found the debt list in plain view in the trash can.

But even if the defendant could prove that these items were not in plain view, his remedy would not require suppression. Once a defendant proves that an affidavit contains intentional misrepresentations, the Court must strike those statements and assess whether the affidavit would nonetheless have been supported by probable cause. If it would, suppression is inappropriate. *Ayen*, 997 F.2d at 1153.

Here, even if the Court considered the affidavit without the items found in the trash can, probable cause would permit the issuance of a search warrant. The following evidence is undisputed: a woman was mysteriously found dead in her house, thousands of dollars in cash were scattered throughout the residence, and plastic wrapping indicative of drug use and trafficking was found in the residence. This evidence would be sufficient to obtain a search warrant. Thus, even if the defendant could prove by a preponderance of the evidence that the affidavit contained intentional misrepresentations—which he has not done—the

misrepresentations would not be material and the remaining portions of the affidavit would support issuance of the warrant. Accordingly, the defendant's alternative motion under *Franks* must be denied.

## VI. CONCLUSION

Even if the Court erred in finding that the defendant lacked standing to file his motion to suppress, his challenge would nonetheless fail as the officers' conduct did not violate the Fourth Amendment. Accordingly, **IT IS ORDERED** that:

1. The motion for leave to file a motion to set aside the Court's order (DE 413) is **GRANTED**; and

2. The motion to set aside the Court's prior order (DE 414) is **DENIED**.

Dated this 24th day of September, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY